U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

DEC 0 4 2007

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION


ROSA M. RUBIO                    CIVIL ACTION
          Appellant             NO. 1:06-cv-1650

VERSUS

MICHAEL J. ASTRUE               JUDGE DEE D. DRELL
COMMISSIONER OF SOCIAL SECURITY MAGISTRATE JUDGE JAMES D. KIRK
          Appellee


## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Rosa M. Rubio ("Rubio") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for Supplemental Security Income childhood benefits ("SSI") and Disability Insurance Benefits ("DIB"). Rubio's mother, Ofilia Jarrell, initially filed an application for SSI benefits on behalf of Rubio on September 8, 1987.[1] In 2000, a continuing disability review was conducted, and Rubio's disability was found to have ceased as of July, 2000 with payments terminating in September, 2000. Rubio's mother sought an appeal of the determination of cessation and a hearing was held in Alexandria, Louisiana on May 6, 2002 before ALJ, Lyndell Pickett. Both Rubio and her mother appeared and offered testimony.

---

[1] Rubio, who was born on November 1, 1984, was two years old at the time, and her legal name was Rosa M. Jarrell. Rosa M. Jarrell married Alejandro Rubio on August 17, 2003 and changed her last name to Rubio. (R. 485,530).

On October 28, 2003, Rubio, on her own behalf, filed an application for Title II disability insurance benefits.  The application was erroneously denied, and a supplemental hearing was held February 17, 2004 before ALJ Pickett.  In attendance were Rubio, her representative, Lisa Green[2], and vocational expert, Thomas Lafosse ("VE Lafosse").  On March 26, 2004, ALJ Pickett issued an unfavorable decision in which he found the SSI benefits properly ceased in 2000.  Additionally, he found Rubio was not disabled through the time of the decision, and, therefore, was not entitled to disability insurance benefits.  (R. 22-37).

Rubio filed a request for review of the ALJ's decision on May 27, 2004.  (R. 17-18).  The Appeals Council declined review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").  (R. 9-12).  Rubio thereafter filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for DIB under Title II of the Social Security Act, a claimant must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. 1381(a).  Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a).  To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less

---

[2]  Lisa Green was a paralegal with Legal Services of Cenla.

than twelve (12) months.   Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.   42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

Rubio was born with Treacher Collins Syndrome, a hereditary condition that causes facial defects.  As a result, Rubio suffered a bilateral hearing loss.  At the time her mother applied for SSI benefits, Rubio's language skills were one half her chronological age, her speech was unintelligible and she was unable to wear a hearing aid.  Accordingly, in a decision dated October 19, 1998, Administrative Law Judge, Robert O. Hawthorne, Jr., found that claimant's impairments met the requirements of Section 102.08, Part B, Appendix 1, Subpart P, Regulation No. 4; therefore, she met the definition of disabled as defined by the Social Security Act. (R.42).

In 2000, a continuation of benefits evaluation was conducted. A determination was made that Rubio had undergone medical improvement based upon the fact there was no medical evidence of breathing problems and because the medical evidence showed she heard well with hearing aids and her speech was "totally intelligible". (R. 46).  Accordingly, her benefits would cease in September of 2000.  Rubio's mother appealed the decision and

elected to continue receiving benefits during the appeal process.[3] (R. 86).

On October 28, 2003, while the appeal of the cessation of benefits was still ongoing, Rubio filed an application for Title II disability insurance benefits on her own behalf. (R.485-487). In this application, Rubio set forth a disability onset date of August 10, 2003, and in the Disability Report, Rubio stated that she was no longer able to work because she was switching schools. (R. 485, 498). Rubio's DIB claim was erroneously denied, so a supplemental hearing was held February 17, 2004 before ALJ Pickett. (R.513-543). This hearing was not only held to consider Rubio's application for disability insurance benefits application but also to obtain additional information regarding her SSI appeal as no action was taken after the May, 2002 hearing.

Since the hearing, Rubio began attending college. She attended Louisiana State University at Alexandria ("LSUA") from the fall of 2002 through the summer of 2003. However, because she was not receiving the help she needed at LSUA and her grades were suffering, she decided to transfer to a college in Arlington, Texas which provided her with the assistance she needed. (R. 519-520).

During this time, Rubio also obtained a job as a hostess and

---

[3] Rubio's mother acknowledged that she understood her responsibilities regarding continuing to accept benefits during the appeal process. These responsibilities included the possibility of having to repay the SSA some or all of the money received if the appeal was unsuccessful.

cashier in a Mexican restaurant. She began working in August of 2002 and worked thirty to forty hours a week. (R. 521). She retained the job until August of 2003 when she moved to Texas, and though she had not worked since that time, she intended to look for employment upon returning to school. (R. 522, 530).

When asked about her hearing loss, Rubio stated that she used a bone conduction hearing aid to hear. Rubio complained of background noises, feedback and static she received from her hearing aid and complained that it caused headaches. (R. 532, 534, 535). She advised that she used a special double sided tape (instead of the headband which was very tight) to hold her hearing aid in place. However, the tape lost its sticking power if she was to sweat or it was humid. (R. 531-532). Rubio also testified that her inability to hear prevented her from doing what others could do and that caused her to be self conscious. (R. 535). The ALJ ultimately determined that Rubio's childhood benefits ceased when she was seventeen years old due to medical improvement. Her impairment, which was present in October 19, 1998, no longer met, equaled or functionally equaled listing 102.08. Accordingly, she was no longer eligible for SSI child benefits.

The ALJ also found that Rubio met the non-disability requirements for a period of disability and DIB and was an insured for benefits through the date of the decision. Additionally, he found she had not engaged in substantial gainful employment since

the alleged onset of her disability. The ALJ determined that Rubio's Treacher Collins Syndrome with bilateral aural atresia was a "severe" impairment, but it did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. He found Rubio to be a younger individual with a high school education. He also found her allegations regarding her limitations are not totally credible.

Ultimately, he found Rubio had a residual functional capacity to perform a significant range of medium work that did not require good hearing, and there were a significant number of jobs in the national economy she could perform, including assembler, vehicle washer and hand packer. Therefore, Rubio was not under a disability as defined by the Social Security Act. (R. 35-36).

### Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401,

91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## ISSUES

Rubio raised the following issues for review:

1. The ALJ failed to properly evaluate plaintiff's impairments in the aggregate.

2. The ALJ posited a defective step 5 hypothetical question to the vocational expert which failed to list any of the impairments he recognized as severe at step 2 and omitted

the uncontroverted limitation that plaintiff could not hear or understand speech or commands unless presented orally and face to face.

Plaintiff's Impairments

Rubio contends that the ALJ failed to evaluate her impairments in the aggregate. Specifically, she contends that the ALJ should have found she suffered from a long-standing speech impairment as well as recurrent headaches. In support, of her contention that she suffers from a speech impairment, Rubio states without citation to case law or statutory authority that speech which is 30% unintelligible is considered a severe impairment. She then incorrectly cites the opinion of consulting pediatrician, John Roheim, stating he found Rubio's speech at least 30% unintelligible. In fact, the opinion states, [h]er speech is at least 70% understandable" and in the assessment section of the opinion he notes her speech, as per her speech sample, was normal. (R. 228-229). Regardless, her own treating physician noted that she can "speak very well" and the consulting speech therapist who evaluated Rubio, Kelly Daiy Sansing, found Rubio's speech 100% intelligible. (R. 222, 237). As Ms. Sansing is a specialist in the field of speech impairments, the ALJ properly relied upon her opinion. Accordingly, substantial weight supports the ALJ's determination not to treat Rubio's speech as a severe impairment.

Rubio also contends that the ALJ should have considered her recurrent headaches a severe impairment. However, she cites no

evidence in the record to support her contention. Though she briefly noted her headaches during the February 17, 2004 hearing, her testimony during the May 6, 2002 hearing revealed that once she replaced the headband with the double sided tape to hold her hearing aid in place, she no longer had headaches. (R. 551). The medical evidence in the record is lacking in terms of showing any recurrent complaints of headaches. In fact, complaints of headache pain are infrequent, at most. Therefore, substantial evidence supports the ALJ's determination that her headaches were not a severe impairment.

Finally, Rubio asserts an argument that the ALJ should have applied the medical improvement standard to the adult SSI portion of the case. However, there is no evidence in the record that Rubio received adult SSI benefits. While it is true that she received SSI benefits as an adult (beyond the age of 17), these benefits were paid pursuant to her mother's election to continue receiving childhood SSI benefits. Rubio never submitted an application for adult SSI benefits.

In support of her contention, she provides a citation to Waters v. Barnhart, 276 F.3d 716 (5th Cir. 2002); however, this case does not deal with a determination of cessation of childhood benefits and the application of a medical improvement standard to determine whether the continued receipt of those childhood benefits as an adult is proper. Additionally, Rubio points to 42 U.S.C.A.

§1383(a)(7) for the proposition that she must be considered an adult recipient, but a reading of the cited statute does not support Rubio's contention.  The only thing the cited section of the statute supports is Rubio's mother's ability to elect to continue to receive benefits which she appealed the determination that childhood SSI benefits ceased.  Accordingly, as there was no adult SSI portion of the case, there was no reversible error for failure to apply the medical improvement standard thereto.

Hypothetical Question

Rubio contends that the ALJ posited a defective hypothetical to the vocational expert at step five of the sequential process.  Specifically, she contends that the ALJ failed to list impairments that he found severe and failed to include the limitation that she cannot hear or understand speech commands unless they are presented orally and face to face.

Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand.  Boyd v. Apfel, 239 F.3d 698, 706-707 (5th Cir. 2001), citing Bowling v. Shalala, 36 F.3d

431, 436 (5th Cir. 1994).

The ALJ found that Rubio's Treacher Collins Syndrome with bilateral aural atresia was a "severe" impairment. (R. 36).   No other impairments were listed, and as stated above, the ALJ properly determined that neither Rubio's speech impairment nor her headaches was a severe impairment.

The one listed impairment, Rubio's hearing impairment, was properly included in all of the ALJ's hypothetical questions posed to VE Lafosse.[4]  In fact, during the February 17, 2004 hearing, the ALJ again questioned VE Lafosse about the availability of jobs in the national economy which did not require good hearing.   VE Lafosse responded by stating that the jobs of assembler, vehicle washer and hand packer were appropriate as they were repetitive jobs which required little communication between the employee and supervisor and/or the general public.

The ALJ went further and added limitations regarding exposure to loud noises and whether someone with a hearing impairment would be at a physical risk in the jobs identified.   VE Lafosse advised that if loud noises existed in the work place, an employee, whether hearing impaired or not, would be required to wear ear plugs.

---

[4] The ALJ originally sent VE Lafosse interrogatories setting forth hypothetical questions regarding the availability of jobs in the national economy for various residual functional capacities that did not require good hearing. (R. 309-312).  The answers to these interrogatories as well as the questions asked therein were discussed during the February 17, 2004 hearing.

Additionally, he noted that he does not place people in work stations near hazardous machinery, so, generally, a physical risk would not be associated with the job. However, given the fact that job sites can vary and he cannot guarantee a hazard free workplace, he felt there could be a slight exposure to physical risk. (R. 540-542).

Though the ALJ reasonably incorporated all of the recognized disabilities, Rubio contends that her ability to work is limited by her inability to hear conversations or commands verbalized out of her eyesight. In support she notes that customers at the restaurant thought she was rude when she would turn her back and fail to hear them. While this limitation would affect her ability to work as a hostess, it does not affect her ability to work as an assembler, vehicle washer or hand packer. As stated and reiterated by VE Lafosse, the jobs of assembler, vehicle washer and hand packer are repetitive in nature and do not require much communication between either employee and supervisor or employee and the general public.

Further, the ALJ found Rubio's allegations regarding her limitations were not totally credible. (R. 32, 36). Specifically, he noted that her claims of not wanting to being around people and feeling bad when people reacted negatively to her because she failed to hear them were undermined by the fact she worked in the food service industry and left, not because she was uneasy dealing

-12-

with the public, but because she was transferring to another college. (R. 33, 498).

The ALJ reasonably incorporated all of Rubio's recognized disabilities and provided her the opportunity to correct any deficiencies. Accordingly, the hypothetical question posed was proper and no legal error exists.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Rubio's appeal be DENIED and DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

      THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____

day of December, 2007.

                                       JAMES D. KIRK
                                       UNITED STATES MAGISTRATE JUDGE